FILED
2005 Oct-07  AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **LAURA CLEMONS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | **Case No.:** |
| | ] | **1:04CV2939-VEH** |
| **v.** | ] | |
| | ] | |
| **ALABAMA DEPARTMENT OF** | ] | |
| **HUMAN RESOURCES, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OF OPINION

### Introduction

The Court has before it the motion of Defendants Alabama Department of Human Resources (ADHR), William Fuller, and Page Walley for summary judgment. For the following reasons, the motion is due to be **GRANTED**.

Plaintiff, Laura Clemons (Ms. Clemons) brought a claim of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., as amended, and retaliation under 42 U.S.C. § 1983 for conduct allegedly violating the First and Fourteenth Amendments to the United States Constitution against the Defendants ADHR, William Fuller (Fuller), former

Commissioner, and Commissioner Page Walley ("Walley").[1]

In her Complaint, Ms. Clemons makes the following claims: (1) Defendant ADHR demoted her and assigned her to a job position 70 miles from her home in retaliation for opposing discriminatory practices (Plaintiff's Complaint at Count One); (2) Ms. Clemons was subjected to discriminatory treatment by Defendant ADHR by virtue of being removed as Calhoun County Director and transferred to another position because of her race (Plaintiff's Complaint at Count Two); (3) Defendant Commissioner Fuller, in both his individual and official capacity, retaliated against Ms. Clemons for her participation in a separate discrimination case and for opposing placing Calhoun County in "in distress" status. She asserts that this conduct violated her First and Fourteenth Amendment rights as applied through 42 U.S.C. §1983 (Plaintiff's Complaint at Count Three); and (4) Ms. Clemons asserts a claim against Commissioner Walley, under Section 1983, in his official capacity (Count Three).

Both parties have filed briefs and submitted evidence in support of their respective positions. The Court has considered all the record evidence and all arguments of counsel.

---

[1]Defendants as a group will hereinafter be referred to as "DHR," whereas, Alabama Department of Human Resources as an individual defendant will be referred to as "ADHR."

Pending before the Court is the Defendants' motion for summary judgment. Defendants argue the following: (1) Ms. Clemons' claim of discriminatory demotion fails because defendants are not the proper parties; (2) Ms. Clemons' transfer was not an adverse employment action; (3) Ms. Clemons has not produced sufficient evidence that race played a role in any employment decisions; (4) Ms. Clemons fails to establish a *prima facie* case of retaliation; (5) Defendants' legitimate business reason cannot be rebutted by Ms. Clemons; and (6) Ms. Clemons' Section 1983 claims are without merit.

## **Statement of Facts**[2]

Laura Clemons[3] was first employed by the ADHR in 1978. With the exception of two years, Ms. Clemons worked her entire career for ADHR in Calhoun County. (Pl. AF ¶ 1)[4]  Ms. Clemons received numerous promotions during her employment with ADHR.  As relevant to this lawsuit, in 1998, Ms. Clemons was selected for the position of Calhoun County Director of Human Resources by the Calhoun County

---

[2]The Court considers the facts, as it must, in the light most favorable to the Plaintiff. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)**.**

[3]Clemons formerly went by the name Laura Price and Laura Johnson-Price.  She will be referred to as Ms. Clemons throughout this opinion.

[4]AF refers to Ms. Clemons' additional facts set forth in her Memorandum in Opposition to Defendants' Motion for Summary Judgment.

Board of Human Resources (hereinafter "Board").  (Pl. AF ¶ 1)   As the County Director,  Ms. Clemons was the chief operating officer for the implementation of DHR programs within Calhoun County, Alabama. *Ala. Code* §38-2-8. (Def. Brief ¶ 2)  A County Director for ADHR is considered  an employee of the ADHR and is a part of the State merit system, but serves in his/her capacity as Director at the pleasure of the County Board of Human Resources. *(Id);*  (Def. Brief ¶ 2) While Ms. Clemons was Director of Calhoun County Human Resources, her evaluations stated that she was "exceeding standards."  (Ex.11, Employee Performance Appraisal 12/01/1998 to 12/01/ 1999; Ex. 12,  Employee Performance Appraisal 8/15/1998 to 2/14/1999; Ex. 13, Employee Performance Appraisal 12/01/ 1999 to 12/01/2000; Ex. 14, Employee Performance Apprisal 12/01/00  to  12/01/01; Ex.15, Employee Performance Evaluation 12/01/2001 to 12/01/2002.)

## A. R.C. Decree and "In Distress" Status

In 1988, a class action Complaint was filed in federal court and alleged the ADHR was not adequately providing services under its Child Welfare Program. (*R.C. v. Hornsby*, Civil Action No.: 88-H-1170-N, filed in the United States District Court for the Middle District of Alabama.)  (Pl. AF ¶ 7) As a result of this lawsuit, the court issued a consent decree (hereinafter referred to as the "R.C.  Decree")

requiring the ADHR to take specific steps to ensure that the Child Welfare Programs it provided met specific standards.  (Def. Brief ¶ 4)  Under an Order issued by the Honorable Ira DeMent, United States Federal District Judge for the Middle District of Alabama, all counties were to meet the R.C.  Decree guidelines for Child Welfare Programs by October 2002.  (Def. Brief ¶ 4)

In July 2002, William Fuller, Commissioner for ADHR, determined that Calhoun County was in danger of not meeting the R.C. Decree goals by the court-ordered deadline.  (Def. Brief ¶ 4)  As a result of the possible failure of Calhoun County to meet  R.C. Decree requirements by the deadline, on July 18, 2002, Commissioner Fuller placed the County in "in distress" status.  (Joint status report). The designation of "in distress" removed the Child Welfare Program responsibilities from the County Director and assigned those responsibilities to a specific Child Welfare team.  (Def. Brief ¶ 5)[5]

After Calhoun County was placed in "in distress" status, Ms. Clemons continued in her position as County Director for Calhoun County with the only

---

[5]At the time of the "in distress" designation, Ms. Clemons was informed that removal of Child Welfare responsibilities was a legal strategy and that she had done nothing wrong.  She was told that when the County was no longer designated as "in distress," the responsibility of the Child Welfare Program would be returned to the County Director.    (Def Ex. 2 Clemons Dep p. 251, Def. Ex. 3, Fuller Dep p. 53, 54)

change in her job duties being the loss of responsibility for the County's Child Welfare Program.  (Def. Ex. 2, Clemons Dep p. 250, lines 9-23;  251, lines 1-15) Thereafter, Ms. Clemons wrote letters to State legislators and elected officials complaining about DHR's decision to place Calhoun County in "in distress" status. (Ex. 27 Clemons Declaration¶14, Ex. 35)

In July 2002, Clemons filed an EEOC charge challenging the removal of her child welfare duties as retaliatory. ( Ex. 20, EEOC charge dated 7-23-02)  Clemons also informed Commissioner Fuller in writing of her disappointment regarding the decision. (Ex. 33 Letter to Commissioner Fuller.)

On April 12, 2002, Fuller informed Clemons in writing that Calhoun County was not going to be declared "in distress."  He also informed her that she would have to work with a Conversion manager to develop a work plan that would address local Child Welfare Program practice and local system changes necessary to accomplish child welfare conversion.  (Ex. 3  April 12, 2002 letter to Laura Johnson Price.)

The meeting minutes from a Calhoun County Board meeting, dated January 2003, reflect, "[a]fter discussion, the Board convened into executive session.  Based upon the discussion that followed with James Slaughter, Sharon Ficquett and Linda Buchanan (all of the state department), a unanimous vote was taken to request an

official, complete State administrative review of the operations of the Calhoun County Department of Human Resources.  (Ex.21, Minutes of Board January 2003)

On October 20, 2003, Melissa Copeland sent a memo to her fellow board members calling the meeting which led to Clemons's removal as Director and transfer to the position of Quality Control Consultant.  (Attached as Ex. 1) That memo states, "[t]his is a very important meeting called by the state."

On October 22, 2003, John James  was certified to be appointed to be County Human Resources Director III by William Fuller effective November 1, 2003. (Ex.2, Certificate of Candidates dated 10/22/2003).   Fuller testified that his signature on the form was only a facsimile, and the decision was actually that of Thomas "Butch" King, the personnel director.  (Def. Ex. 3, Fuller p. 47)

On October 31, 2003, subsequent to a Board vote, James Slaughter, Deputy Commissioner for Field Administration, delivered a letter to Clemons from William Fuller, advising Clemons that she was being transferred from her position as Director of Calhoun County Human Resources to a position as a Quality Control Consultant with the Food Stamp Division of Human Resources.  (Def. Ex. 7 Letter to Laura Johnson Price Dated Oct. 31, 2003, Def. Ex. 4, Slaughter Dep p. 56) In his deposition, Slaughter acknowledged that he was aware that the October 31, 2003

letter was prepared in advance of the meeting held by the Board.[6] (Def. Ex. 4 Slaughter Dep p. 56, 57) Slaughter also testified that the Commissioner's office and the County Board approved the transfer pursuant to regulations. (Def. Ex. 4 Slaughter Dep p. 22, 23) Fuller testified in his deposition that he believed that the vote had been taken before he signed the removal letter. (Compare Def. Ex. 3 Fuller Dep p. 80, to Def. Ex. 4, Slaughter Dep p. 56, 57)

Melissa Copeland, a member of the Board, declared in an affidavit that there was no interference by ADHR in Clemons's removal; Copeland has, on another occasion, offered a sworn statement that ADHR has intentionally interfered with the removal of a previous County Director.[7] (Plaintiff's Ex. 24; Truitt Statement, Def. Ex. 8) [8]

---

[6] James Slaughter denies, however, that he or ADHR had knowledge of the outcome of the vote by the Board before the vote took place. (Def. Ex. 4 Slaughter p. 56, 57)

[7] Defendants admit that Melissa Copeland submitted a declaration in a lawsuit in 1996 providing that ADHR wanted to transfer County Director Erin Snowden from Calhoun County back to ADHR. (Plaintiff's Ex. 24.) The basis for the transfer of Ms. Snowden was due to the findings of the ADHR Office of Civil Rights regarding the internal complaint made by Plaintiff against Snowden. (Plaintiff's Ex. 18.)

[8] Melissa Copeland is also referred to as Melissa Truitt. (Ex. 29, Deason Dep p. 7,8) Copeland was unavailable to be deposed as to her recollection of events. (Ex. 29, Deason Dep p. 53)

In his deposition, Slaughter testified that the Board had issues with Ms. Clemons regarding the fact that the County was going to be designated "in distress." (Def. Ex. 4, Slaughter p. 18, 27, 28, and 30.)   He also testified as to other issues the Board had with Ms. Clemons in her position as Director.   (*Id.*)   He stated that the Board was "not happy with her leadership in the County." (*Id.*)   He also stated that the Board had issues with Ms. Clemons not complying with the leave slip policy, and that the Board had a "general dissatisfaction" with Ms. Clemons's leadership style. (*Id.*)

Ms. Clemons's transfer did not change her merit system classification of "County Director IV" and did not reduce her salary, privileges, or benefits.  (Pla. Dep p. 226, lines 14-16)  Ms. Clemons was originally assigned to begin work as the Food Stamp Quality Control Consultant in the Birmingham office of ADHR.  (Def. Ex. 7, Letter to Laura Johnson Price Dated Oct. 31, 2003, Def. Ex. 4, Slaughter Dep p. 56)

After her transfer, and before reporting to her new position, Ms. Clemons requested that she be allowed to work in a location closer to her home in Oxford, Alabama.   (Def. Brief ¶ 9)   The ADHR granted her request to work at the Department's Rainbow City, Alabama location approximately forty to forty-five (40-

45) miles from her residence.  (*Id.*)  Ms. Clemons began working in her new position in Rainbow City in March, 2004.  As a Quality Control Consultant, Ms. Clemons had authority to recommend policies but it was not her job to implement any changes. (Ex. 30, Reid Dep p. 10)  County directors have supervisory authority and implement policies. (Reid Dep p. 10, 11)  Although as the Calhoun County Director, Ms. Clemons supervised over one hundred people,. (Ex. 27, Clemons Dec. ¶19),   as a consultant, Ms. Clemons had no duty to supervise. (Reid,  p. 11)

In December 2004, Clemons received an evaluation for her performance as a Food Stamp Quality Control Consultant, which rated her as "consistently exceeds standards." (Ex. 16, Clemons Employee Performance Evaluation for 12/01/2003 to 12/01/2004. )  Ms. Clemons continued to work in her position in the Rainbow City office until she tendered her resignation on January 26, 2005, with an effective retirement date of February 28, 2005.  (Def. Brief ¶ 10)

### B. Crum Case

In 1998, Ms. Clemons joined a class action lawsuit against ADHR and other State departments alleging race discrimination.  (Pl. AF ¶ 7)  In this case, *Eugene Crum, Jr., et al v. State of Alabama, et al*, Civil Action Number: 94-T-356, (*Crum*) filed in the United States District Court for the Middle District of

Alabama, Ms. Clemons claimed to have been discriminated against by ADHR for actions that occurred prior to 1998.  (Pl. AF ¶ 7)

In January 2002, Ms. Clemons filed an EEOC Charge of Discrimination.[9] On April 25 and 26, 2002, Clemons was deposed over the course of two days by attorneys for DHR concerning her allegations of discrimination in *Crum*.  (Ex. 34, Johnson-Price Dep)   The deposition was attended by Butch King, a DHR official. (*Id*.)

Ms. Clemons filed this lawsuit on October 7, 2004.  (Complaint, p. 1).

## Summary Judgment Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial

---

[9] This Charge is not part of this lawsuit and was not pursued as a cause of action in court. (Plaintiff's compliance with Court's October 14, 2004 Initial Order Governing Proceedings in this Action, filed March 21, 2004.)  Plaintiff identified two Charges of Discrimination as being the basis for her Complaint, Charge #130-2004-00556, filed November 25, 2003, and Charge #130-2004-01970 filed May 28, 2004. *(Id.)*

responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue

at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple

statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Substantive Law and Analysis

### I. The Transfer

Defendants first contend that they are not the proper parties regarding the alleged discriminatory transfer. Because summary judgment is proper as to the merits, a short explanation of the Court's determination of the matter is appropriate.

In moving for summary judgment, the Defendants disclaim any responsibility

for the decision to transfer Ms. Clemons.  DHR argues that the Board voted to transfer Ms. Clemons from her position.  The Defendants have provided the Court with affidavits of the members Calhoun County Board of Human Resources who voted to transfer Ms. Clemons on October 31, 2003.  (Exhibit D, Affidavits of Board members.)

The evidence submitted by Ms. Clemons, however, at least creates a genuine issue of material fact as to whether the Defendants may also have been involved in her transfer.  James Slaughter, Deputy Commissioner for Field Administration, testified that DHR knew in advance of any vote by the Board that Ms. Clemons's removal letter was prepared in advance of the vote.  (Def. Ex. 4, Slaughter Dep 56-57.)  This raises a genuine issue as to who in fact made the decision to transfer Ms. Clemons: DHR or the Board.  The evidence suggests that DHR had knowledge of the transfer before the Board even held a meeting, and the Commissioner of DHR had drafted the removal letter prior to said meeting.  Ms. Clemons has raised the question of whether DHR had involvement in her transfer by virtue of its knowledge of her removal and transfer prior to the alleged date that the decision was made.

Furthermore, the statutory authority cited to by the Defendants regarding the authorization of a transfer raises a question as to who in fact is involved in the

transfer of an employee.  Section 670-x-9-04 of the State Personnel Board Rules

provides in pertinent part:

> (2) <u>Transfers</u>.  An appointing authority may, at any time, assign a classified employee under his jurisdiction from one position to another in the same class.  Any classified employee may be transferred from a position in one department to a position in the same class in another department, provided that the director has authorized the transfer and has received approval of both appointing authorities concerned.

The Court takes particular notice of the fact that the cited rule clearly

precluded anyone except the Board from <u>removing</u> a Director,  however, the rule

authorizing a transfer leaves the question open as to who in fact is involved in the

transfer of an employee.  Simply because the Defendants are not the "appointing

party," they are not by definition precluded from transferring an employee, at least

not in so far as the rule is concerned.  The Defendants have not provided the Court

with any law that clearly prohibits the Defendants from any involvement in the

<u>transfer</u> of an employee.   The language of the rule does not appear to be

exclusionary.  Therefore, because the Defendants have failed to convince the Court

that, as a matter of law, they are unable to be involved in the transfer of an employee,

namely Ms. Clemons, the Court finds that the parties to this case are proper.

## II.  Retaliation

16

Ms. Clemons claims retaliation under Title VII, 42 U.S.C. 2000e and under the First Amendment and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. A. § 1983. Ms. Clemons claims that she is being retaliated against for speaking out about discriminatory practices in her place of employment and for participating in a discrimination lawsuit and she alleges that DHR demoted her out of retaliation for such protected activity. The alleged demotion was from a position as Director of Calhoun County to a position as a Quality Control Consultant in a location approximately seventy miles from her home.[10] She also alleges that it is a demotion because her responsibilities changed in her new position.

### A.  Ms. Clemons Fails to Establish Retaliation Under Title VII

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) [s]he engaged in an activity protected by Title VII; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between [her] protected activity and the adverse employment action. *Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004)*; Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir.

---

[10] As will be discussed *infra*, Ms. Clemons never had to drive 70 miles, she was granted her request to transfer to a new location closer to home.

1999) (citing *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997)).  The causal link requirement is to be construed broadly, and the Eleventh Circuit has stated that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id*. at 1460 (quoting *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

Ms. Clemons claims that she was retaliated against for opposing discriminatory practices in the workplace, specifically, for filing with DHR an internal complaint of race discrimination in 1996.  ( Ex. 2, Plaintiff's Dep p. 307, lines 14-19.)  She also contends that she was retaliated against for participating in a separate discrimination lawsuit: specifically, she gave a deposition in the *Crum* lawsuit.  Both of these activities fall within the parameters of protection Congress intended to be provided by  Title VII.  42 U.S.C. 20003-3(a); *Merrit v. Dillard Paper Co.*, *120 F.3d 1181 (11th Cir. 1997).*

Ms. Clemons, however, cannot establish that she suffered an adverse employment action.  Ms. Clemons contends that because Defendants increased her commute and because her responsibilities were different in her new position, she suffered an adverse employment action when she was transferred. Defendants combat that argument by asserting that Ms. Clemons failed to establish a *prima facie* case. Defendants assert that Ms. Clemons failed to provide the Court with sufficient

evidence to establish that her transfer, from Director to Quality Control Consultant, was an adverse employment action.  The Court agrees with Defendants.

Whether or not a plaintiff has established that she has suffered from an adverse employment action requires close scrutiny in transfer cases because undesired transfers only "sometimes constitute an adverse employment action."  *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077-78 (11th Cir. 1996).   That an employee is involuntarily transferred does not alone necessitate the finding that an adverse employment action has occurred under Title VII:

> In light of Eleventh Circuit precedent, this court must conclude that [regardless of] whether the transfer was requested, or was required against the employee's will, the position to which the employee was transferred, or denied a transfer, must entail a serious and material change in the terms, conditions, or privileges of employment in order for a plaintiff to state a *prima facie* case of intentional discrimination.

*Smith v. Ala. Dep't of Corrs.*, 145 F.Supp. 2d 1291,1299 (M.D. Ala. 1999).  Merely because a transfer is involuntary does not mean that it is adverse.  *Doe*, 145 F.3d at 1454.

An employment action is considered sufficiently "adverse" to be actionable under federal discrimination statutes "only if it results in some tangible, negative

effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc*. 257 F.3d 1249, 1261 (11th Cir. 2001) (ADA retaliation claim); *see also Gupta v. Florida Bd. of Regions*, 212 F.3d 571, 587 (11th Cir. 2000).  Title VII is not a "general civility code" and was not intended to protect employees from the "ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).  In the Eleventh Circuit, to prove an adverse employment action under Title VII's anti-discrimination clause, an employee must show a <u>serious</u> and <u>material change</u> in the terms, conditions, or privileges of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)(emphasis added).  According to the Eleventh Circuit, "[A]ny adversity must be material; it is not enough that a transfer imposes some de minimus inconvenience or alteration of responsibilities [of the plaintiff's job]." *Doe*, 145 F.3d at 1453; *see also Davis*, 245 F.3d at 1239 ("Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause, the employer's action must impact the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way.")  Moreover, for a plaintiff to establish that an action is truly adverse under Title VII, the plaintiff must demonstrate that a reasonable person in the plaintiff's same position would have viewed the contested employment action as materially adverse under the circumstances.  (*Id*.)  The Court must use both a subjective and objective test when considering whether a particular

action is sufficient to constitute an "adverse" employment action for the purpose of a retaliation claim. *Doe,* 145 F.3d at 1448-49.

Although Plaintiff characterizes her transfer as a demotion, the current state of the law and the evidence provided to the Court indicate otherwise. Under Alabama law, an employee of a State department can be transferred at any time "from one position to another in the same class." *Ala. Code* § 36-26-24. In the case at hand, it is undisputed that Ms. Clemons's job classification as County Director IV did not change upon her transfer. (Personnel Action Form of Laura Johnson-Price, dated October 31, 2003.) Furthermore, it is undisputed that Ms. Clemons's salary, benefits, privileges, and opportunities remained the same in her new position. (Plaintiff's Dep at p. 226, lines 3-16.) Plaintiff failed to provide the Court with sufficient evidence to rebut this assertion.

Plaintiff alleges specifically that the transfer caused her to have a longer commute to work every day, thereby creating an undue burden that affected the terms and conditions of her employment. (Complaint at p. 5, paragraph 19.) This argument is unpersuasive. First, Ms. Clemons alleged in her Complaint that in her new position, she had to drive 70 miles to work in Birmingham each day. However, the evidence indicates, and Ms. Clemons admits, that she never reported to work in

Birmingham.  After her transfer, and prior to commencing the new position, Ms. Clemons  requested that she  be reassigned to Rainbow City, Alabama, a location closer to her home.  It is undisputed that her request was granted.

Second, while having to drive a longer distance may be an inconvenience, it does not rise to the level of an adverse employment action.  This Court finds persuasive the District Court's decision in *Alabama v. Smith*, 64 F.Supp. 2d 1215, 1221-22 (M.D. Ala. 1999), in which the Court concluded that a Title VII plaintiff could not establish adverse employment action because he suffered no loss of pay, benefits, or classification.  Furthermore, the Court determined that requiring a plaintiff to drive to work is not sufficient to give rise to adverse status. (*Id.*)  An even more persuasive argument against Ms. Clemons' complaint of undue burden is her own testimony at her deposition.  Ms. Clemons stated, that during the course of her employment, she had been willing to work in numerous different counties other than Calhoun County.  (Plaintiff's Dep at p. 425, lines 10-23; p. 426, lines 1-23; p. 427, lines 1-23; p. 428, lines 1-12.)

Next, Plaintiff asserts that her responsibilities decreased in her new position as a Quality Control Consultant and, therefore, the act of transferring her was an adverse employment action.   However, Ms. Clemons failed to provide the Court with

sufficient evidence to permit a reasonable fact finder to conclude that her alleged decrease in responsibilities materially and adversely affected the terms, conditions, or privileges of her employment.  As stated above, Ms. Clemons was not denied any of the benefits she had prior to her transfer, she maintained her status as a County Director IV, and her salary remained the same in her new position as it had been in her old position.  She provided no evidence that there was any loss in prestige and no evidence that her eligibility for salary increase would be any different in her new position.[11]  Although subjectively Ms. Clemons believed she was being demoted because her responsibilities changed with her new position, her subjective belief is not sufficient alone to overcome summary judgment. *Doe*, 145 F.3d at 1449 (implementing an objective standard).

Ms. Clemons has failed to provide the Court with evidence putting into context the argument that her change in job responsibilities or her lack of supervisory duties amounted to an adverse employment action.  Essentially, she claims that she no longer has authority to supervise others.  However, there was no description as to what her supervisory duties entailed in her former position, nor what her new position

---

[11] Although Ms. Clemons's allegation that she supervised over one hundred people in her former position weighs in her favor, it is insufficient to give rise to a "serious and material change" in the terms, conditions, and privileges of her employment, especially when considering the totality of the evidence as is necessary in determining whether the Plaintiff has established a *prima facie* case.

entailed.   The Court was provided with a brief description of her jobs via her "Employee Performance Appraisals". (Pla.'s Ex. 11-16).   However, given the brevity of the descriptions, the Court is unable to discern that the transfer from one position to the other is a demotion by virtue of the lack of supervisory authority. The last evaluation Ms. Clemons  received as a Director prior to her transfer was the lowest during her tenure as Director.   However, her first evaluation as a Quality Control Consultant was the highest evaluation she received during her career with ADHR. As Director, Plaintiff had five responsibilities for which she was evaluated; as Quality Control Consultant, Ms. Clemons also had five individual responsibilities for which she was evaluated.   (Pla. Ex.16, Employee Appraisal Evaluation, 12/01/03-12/01/04).   The responsibilities in the different positions are indeed different from each other as she has been transferred to a different position in a different department. However, there is no evidence that one department is superior to the other, or that one job is superior to the other.   Both positions entailed different duties.   However, both positions afforded Ms. Clemons the Director IV classification, equal salary, benefits, privileges, and eligibility for future earnings.

For a Title VII retaliation claim to be actionable, the transfer must constitute an adverse employment action and the plaintiff must provide the Court with sufficient evidence to establish a serious and material change in the terms, conditions, or

privileges of her employment.  Ms. Clemons has failed to satisfy such requirements and, therefore, has failed to establish a *prima facie* case of retaliation under Title VII.[12]  Thus, summary judgment is due to be **GRANTED** as to Count I.

## B.  Ms. Clemons Fails to Establish Retaliation Under 42 U.S.C. § 1983

Ms. Clemons alleges Section 1983 retaliation claims against former Commissioner Fuller in both his official and individual capacity and against Commissioner Walley in his official capacity.  She contends that the retaliation by Fuller was in response to her testimony in the *Crum* case regarding discrimination and her complaints of alleged equal protection violations.  Ms. Clemons asserts that such conduct violates her First and Fourteenth Amendment rights as applied though 42 U.S.C. § 1983.  (Complaint at p.7, paragraphs 28-29.)

### 1. First Amendment

The law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech.  *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 140-42, 103 S.Ct. 1684, 75 L.Ed.2d 708(1983).  Of course, a public employee does not have an absolute right to freedom of speech and the "State's interest as an employer in regulating the speech of its employees differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general.  *Connick*, 461 U.S.

---

[12]Because the Court has determined that the Plaintiff failed to satisfy the second prong of a *prima facie* case of retaliation, the Court need not address the remaining prong.

at 140, 103 S.Ct. 1684 (quotation marks omitted).  To strike the appropriate balance between the respective interests, we apply the four-step analysis set forth in *Pickering v. Bd. of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Bryson v. Waycross*, 888 F.2d 1562 (11th Cir.1989).

An employee can establish a prima facie case of retaliation under 42 U.S.C. 1983 by demonstrating: (1) the speech involved is a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action.

*Bryson*, 888 F.2d at 1565-66.

As a preliminary matter, Defendants have argued that Ms. Clemons's claims are not cognizable because she did not suffer an adverse employment action.  This has already been analyzed and established by the Court, *supra*.  In her brief, Ms. Clemons does not assert a separate adverse employment action for retaliation under Section 1983.  She merely asserts separate conduct on her own behalf which led to the alleged retaliation.  Therefore, although Ms. Clemons' speech may have been protected by the First Amendment,[13] because there was no resulting adverse employment action, her claim for retaliation under Section 1983 fails as a matter of law.[14]  Therefore, summary judgment as to Count III, as it pertains to the First

---

[13]Because the Court has decided Count III based on the preliminary matter of whether or not an adverse employment action has occurred, the Court will refrain from further analysis as to the constitutionality of the speech and the *Pickering* balancing test.

[14]Because her claim fails as a matter of law, the Court will not address the issue of qualified immunity.

Amendment, is due to be **GRANTED** as to both Commissioners.[15]

### 2. Fourteenth Amendment

In the Eleventh Circuit, there is no cause of action for retaliation based on violations of the Equal Protection Clause of the Fourteenth Amendment of the Untied States Constitution. *Ratliff v. DeKalbCounty*, 62 F.3d 338, 340 -341 (11th Cir., 1995). In *Ratliff,* the Plaintiff alleged that Defendants had violated her equal protection rights by discriminating against her on the basis of her sex and by retaliating against her for her complaints of discrimination. *(Id.)* She filed suit under 42 U.S.C. § 1983, alleging equal protection violations. *(Id.)* The district court denied summary judgment on the equal protection claims based on qualified immunity, and the Defendants appealed. *(Id.)* Defendants argued that the district court erred in denying them qualified immunity on Plaintiff's equal protection claim for retaliation because no clearly established right exists under the *equal protection* clause to be free from retaliation. *(Id.)* The Eleventh Circuit reversed the district court, explaining, "a constitutional claim for retaliation may be brought under 42 U.S.C. § 1983 pursuant to the [F]irst [A]mendment, not the equal protection clause. Because no established right exists under the equal protection clause to be free from

---

[15]Furthermore, the Court takes particular notice of the fact that Plaintiff did not articulate any specific conduct by Commissioner Walley that allegedly violated her First Amendment rights.

retaliation, we reverse the district court's denial of qualified immunity on [Plaintiff's] equal protection retaliation claim." *(Id.)*

Accordingly, summary judgment as to Count III, as it pertains to retaliation under the Equal Protection Clause of the Fourteenth Amendment, is due to be **GRANTED** as to both Commissioners.

### III.  Discrimination under Title VII

In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  *See Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir. 1998)*; see also Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  *Burns v. Gadsden State Community College*, 908 F.2d 1512 (11th Cir. 1990)*.  Cf. Wright v. Southland Corp.,* 187 F.3d

28

1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

Here, Plaintiff has presented only circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." *Combs*, 106 F.3d at 1527.  Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *(Id.* at 1527-28.)  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that (1) he or she was a qualified member of a protected class; (2) he or she was subjected to an adverse employment action; and (3) that otherwise similarly situated employees outside the plaintiff's class were

treated dissimilarly.[16]  *See McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield*

*v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d

at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d

1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and thereby has created the

presumption of discrimination, the burden of production shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its actions.[17]  *See Combs*, 106

F.3d at 1528.  The employer "need not persuade the court that it was actually

motivated by the proffered reasons."  *Burdine*, 450 U.S. at 254-55; *see Chapman*,

229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more

such reasons, then the presumption of discrimination drops out of the case and the

burden of production again shifts to the plaintiff to offer evidence sufficient for a

reasonable jury to conclude that the employer's supposedly legitimate reason is

merely a pretext for illegal discrimination.[18]  Despite this shifting of the burden of

---

[16]*See also McDonnell Douglas*, 411 U.S. at 802 n.13 (observing that "[t]he facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations").

[17]*See Chapman*, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion").

[18]If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that

production between the plaintiff and the defendant under the *McDonnell Douglas*

and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that

the defendant intentionally discriminated against the plaintiff remains at all times

with the plaintiff." *Burdine*, 450 U.S. at. 253.  Given that the ultimate burden of

persuasion always lies with the employee, a plaintiff may prevail on an employment

discrimination claim and may also defeat a summary judgment motion either by

proving that intentional discrimination did indeed motivate the defendant or by

producing sufficient evidence to allow a rational trier of fact to disbelieve the

employer's proffered legitimate reasons, thus permitting but not compelling the trier

of fact to make a finding of illegal discrimination.  *See Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000).

It is undisputed that Ms. Clemons, an African-American woman who was

employed at the time she filed her Complaint, is a member of a protected class under

Title VII.  *McDonnell Douglass*, 411 U.S. at 802 .  Ms. Clemons's discrimination

claim fails, however, because she cannot establish that Defendants took an adverse

employment action against her. An "adverse employment action" is an essential

element of two types of *prima facie* discrimination: (1) a prima facie circumstantial

case and (2) a prima facie case of retaliation. *Doe*, 145 F.3d at 1448.  As fully

---

reason is not sufficient.  *Chapman*, 229 F.3d at 1030.

discussed in II. A. 2., Ms. Clemons failed to establish an adverse employment activity, an essential element of a Title VII discrimination claim.  As such, summary judgment is due to be **GRANTED** as to Count II.

### Conclusion

Based upon the foregoing, DHR's motion for complete summary judgment will be **GRANTED** as to Ms. Clemons' Complaint.  The Court finds that no material issues of fact remain and that the Defendants are entitled to judgment as a matter of law as to all claims asserted by Ms. Clemons.  A separate order shall be entered.

**DONE** and **ORDERED** this 7th day of October, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

32