IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LAURA CLEMONS,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   Case No.:  1:04-CV-2939-VEH |
| | ] |
| **ALABAMA DEPARTMENT OF** | ] |
| **HUMAN RESOURCES, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

This case is on remand as a result of the mandate issued by the Eleventh Circuit on November 21, 2006, and entered on November 22, 2006.  (Doc. #47).  Plaintiff Laura Clemons ("Clemons") brought a claim of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., as amended, and retaliation under 42 U.S.C. § 1983 for conduct allegedly violating the First and Fourteenth Amendments to the United States Constitution against Defendants Alabama Department of Human Resources ("ADHR"), former Commissioner William Fuller ("Fuller"), and Commissioner Page Walley ("Walley").  (Doc. #1).

On October 7, 2005, this court entered a memorandum opinion and order (Doc. #41; Doc. #42) granting Defendants' Motion for Summary Judgment filed on July 15, 2005. (Doc. #21). On November 2, 2005, Clemons filed her notice of appeal (Doc. #43), which she subsequently amended on November 4, 2005. (Doc. #44). One year later, the Eleventh Circuit issued its mandate, on account of intervening United States Supreme Court precedent decided on June 22, 2006, affecting the area of Title VII retaliation.

The text of the mandate is as follows:

> In deciding to enter summary judgment in favor of the defendant on the Title VII retaliation claim, the district court applied our circuit law requiring that the plaintiff establish an adverse employment action as an element of such a claim. Since then the Supreme Court has issued its decision in *Burlington Northern & Santa Fe v. White*, 126 S. Ct. 2405 (2006), which changes the law that must be applied in this circuit. Without implying how the issue should be decided, we think it best to allow the district court in the first instance to address the Title VII retaliation claim in light of the Burlington Northern decision.
>
> Accordingly, the judgment in this case is VACATED in its entirety and the case is REMANDED with instructions that the district

court should reconsider its decision of the Title VII retaliation claim in light of *Burlington Northern & Santa Fe v. White*, 126 S. Ct. 2405 (2006).

After the issuance of the mandate, this court entered a briefing order (Doc. #48) directing the parties to address the impact of *Burlington Northern* on Clemons's Title VII retaliation claim. The parties have filed their briefs, and the mandate issue is now ripe for a decision.

As explained below, the court concludes that summary judgment in favor of Defendants on Clemons's Title VII retaliation claim (1) is appropriate under the reasonable materially adverse standard announced in *Burlington Northern*; (2) alternatively is appropriate because Clemons is unable to establish the *prima facie* element of causation; and (3) alternatively is appropriate because Clemons lacks sufficient evidence of pretext.

## II.   REINSTATEMENT OF PRIOR MEMORANDUM OF OPINION

The mandate vacates the prior judgment of this court "in its entirety" while also directing this court to revisit its analysis of Clemons's Title VII retaliation claim only. As a result, the court **HEREBY REINSTATES** the contents of Doc. #41, including the court's introduction, statement of facts, summary judgment standard, conclusion, and all analysis unrelated to Clemons's Title VII retaliation claim,

including § I., § II.B., and § III. The court excludes from the scope of reinstatement § II.A. (pages 17 through 25), which addresses only Title VII retaliation. In lieu of the prior contents of § II.A., the court substitutes the following analysis that is set forth in § III, *infra*.

### III. Title VII Retaliation Analysis

#### A. Clemons is unable to satisfy the *Burlington Northern* reasonable material adversity retaliation standard.

In *Burlington Northern*, the Supreme Court held:

> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

126 S. Ct. at 2409. Prior case law in the Eleventh Circuit limited the foundation of retaliation claims to treatment amounting to adverse employment actions. Accordingly, the *prima facie* elements for retaliation under Title VII pre-*Burlington Northern* were proof of "(1) statutorily protected expression; (2) . . . an adverse employment action; and (3) . . . a causal connection between the two events." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

In December 2006, the Eleventh Circuit explained the impact of *Burlington*

*Northern* on the second *prima facie* element to a Title VII retaliation claim as:

> [T]he Supreme Court has defined an adverse employment action in the context of a retaliation claim as an action by an employer that is harmful to the point that it could well dissuade a "reasonable worker from making or supporting a charge of discrimination."

*Wallace v. Georgia Dept. of Transp.*, No. 06-13345, 2006 WL 3626967, at *2 (11th Cir. Dec. 13, 2006).

Clemons premises her retaliation claim upon her involuntary job transfer as Director for the Calhoun County Human Resources Department on October 31, 2003, to the position of Food Stamp Quality Control. Reviewed in the context of the case before it, the court concludes that Clemons fails to meet *Burlington Northern's* reasonable worker materially adverse standard.

Under Alabama law, an employee of a state department can be transferred at any time "from one position to another in the same class." Ala. Code § 36-26-24. This means that a reasonable state worker is on express notice that the risk of an involuntary transfer comes with the job.

Moreover, it is undisputed that Clemons's job classification as County Director IV did not change upon her transfer to the Food Stamp Quality Control position. (Doc. #23 at Ex. 9). Likewise, Clemons's Recommendation for Personnel Action Form reflects that she received an intra-department transfer (as opposed to a

5

demotion). (*Id.*). Furthermore, the record shows that Clemons's salary, benefits, privileges, and opportunities remained the same in her new position. (*See, e.g.*, Doc. #23 at Ex. 2 at 226 (Clemons's confirming that her salary remained unchanged upon transferring); *id.* at Ex. 7 ("Your position will be at the same salary and benefit level that you are currently receiving.")). A reasonable worker who knew that a risk of an involuntary transfer accompanied a job and who, upon being transferred to a new position in a different (but ultimately, agreed-to) location, maintained the same job classification, salary, benefits, privileges, and opportunities, would not be dissuaded "from making or supporting a charge of discrimination."

In her complaint, Clemons alleges that the transfer caused her to have a longer commute to work every day (*i.e.*, 70 miles to work in Birmingham). However, the evidence indicates, and Clemons confirms that she never reported to work in Birmingham. (Doc. #23 at Ex. 2 at 227). Instead, after the transfer decision, but prior to her commencing the new position,[1] Clemons was given the option to be reassigned to Rainbow City, Alabama, a location closer to her home in Oxford, Alabama. (*Id.* at 228). Clemons ultimately accepted the option to work in Rainbow City. (*Id.*). A reasonable worker who selected to accept a job transfer to a new location closer to her

---

[1] The transfer was to take effect on November 15, 2003, with a reporting date of November 17, 2003. (Doc. #23 at Ex. 7).

6

home than the first transfer opening offered to her would not be dissuaded "from making or supporting a charge of discrimination."[2]

Finally, Clemons complains that her responsibilities decreased in her new position as a Quality Control Consultant.[3] The responsibilities and duties for the positions are indeed different from each other. However, Clemons has failed to provide sufficient evidence to permit a reasonable fact finder to conclude that a mere difference in responsibilities, such as a decrease in supervisory duties, with all other material job considerations remaining the same, would dissuade the reasonable worker "from making or supporting a charge of discrimination."

---

[2]The court notes that, in her brief after remand, Clemons's counsel asserts that Rainbow City was still an "86 mile round trip" (or 43 miles each way, compared to 70 miles each way to Birmingham). (Doc. #52 at 11). However, although Clemons, in her resignation letter (Doc. #27, attachment 7), asserts that the transfer to Rainbow City imposed a financial hardship on her because she was not reimbursed for her commuting mileage - 43 miles each way - from her home, she does not state, and her counsel does not point the court to any evidence that establishes, how far her commute was before the transfer to Rainbow City. Although the court thinks it is reasonable to infer that the commute to Rainbow City was farther than Clemons's pre-transfer commute, the court declines to speculate what that pre-transfer commute mileage was, much less to find that an unspecified increase in miles commuting would dissuade a reasonable worker "from making or supporting a charge of discrimination."

[3]In particular, Clemons complains that in her prior position she supervised over one hundred people. In her brief upon remand, she also alleges that her new position left her with "the sole task of making recommendations on how DHR could ferret out food stamp fraud." (Doc. #52 at 14-15).

For example, Clemons has not shown that a decrease in responsibilities limited her ability to advance by preventing her from taking exams administered by the State Personnel Department to qualify for a higher level job or otherwise diminished her ability to apply and interview for higher level county director jobs. She has provided no objective evidence that there was any loss in prestige with the transfer, that one area of the department is superior to the other, or that one job is superior to the other.[4] Additionally, she has not shown that her eligibility for salary increases or advancement would be any different in her new position.[5]

To the extent that Clemons has indicated that her job change with fewer

---

[4] Instead, testimony from Fuller, the then-Commissioner of ADHR, confirms the value of Clemons's new position to the department. ("The Food Stamp Program is extremely important. The work of the Quality Control team, particularly a seasoned county director, can be financially extremely valuable to State DHR and to the program in terms of curbing error rates, earning bonuses, avoiding penalties. It is an important job." (Doc. #23 at Ex. 3 at 56-57).

[5] In her brief on remand, Clemons maintains that she "was permanently placed into the Food Stamp Control position" and that her "DHR career was ended by assignment to 'food stamp consultant position.'" (Doc. #52 at 11, 16). However these statements stem merely from Clemons's own personal beliefs and are not supported by any independent, objective evidence and, accordingly, under *Burlington Northern*, are insufficient to create a material factual dispute as to reasonable material adversity. *See also Doe v. DeKalb Co. Sch. Dist.*, 145 F. 3d 1441, 1448-49 (11th Cir. 1998) ("[W]e adopt an objective test: An ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse. In our view, this test best reflects our employment discrimination doctrine and precedents applying an objective test.").

responsibilities meant her position was less prestigious, her own subjective feelings are not relevant under *Burlington Northern*. Moreover, Clemons has not offered any objective proof that her new position was less respectable.[6] A reasonable worker who had fewer responsibilities upon transferring to a new position but who retained the same job classification, pay, opportunities and who was not otherwise limited from seeking advancement while in the new position would not be dissuaded "from making or supporting a charge of discrimination."

None of the Eleventh Circuit cases briefed by the parties squarely addresses the issue of material adversity in the context of an involuntary transfer. However, in *Higgins v. Gonzales*, No. 06-2556, 2007 WL 817505 (8th Cir. Mar. 20, 2007), the Eighth Circuit analyzed an unwanted relocation post-*Burlington Northern* and explained in its ruling in favor of the employer:

> Under Higgins's logic, any move would qualify as a materially adverse action because it would force an employee to start over in a new city. We are unwilling to set such a definite line. Here, even if we were to accept the premise that her move was a retaliatory action–which we do not–we cannot conclude the move was materially adverse. There is no evidence her new duties were more difficult, less desirable or less

---

[6] For example, Clemons testified that her new position "in her opinion" was less meaningful. (Doc. #23 at Ex. 2 at 225-26 ("Q. Is food stamps not a meaningful program. A. It is a meaningful program. It's one program. I was over all programs. So, from all to one, that's a decrease in my opinion, but that's just my opinion.")). Clemons's personal beliefs, however, are insufficient to create a material issue of disputed fact as to objective material adversity.

prestigious.  In this context, even given the inconvenience of a move, this action does not rise to the level of a materially adverse action.

*Id.*, at *9.  Therefore similar to Higgins, Clemons's involuntary change in her position with fewer responsibilities to a new location that she selected while maintaining the same job classification, salary, benefits, privileges, and opportunities fails to meet the *Burlington Northern* objective material adversity standard.

### B. Alternatively, Clemons's retaliation claim fails due to a lack of proof of any causal connection.

The specific instances[7] of protected Title VII activity upon which Clemons relies include: (1) her internal claim of discriminatory treatment in 1996; and (2) her deposition testimony given in the *Crum* state-wide employment discrimination case on April 25, 2002, and April 26, 2002.[8]  The effective date of Clemons's transfer was

---

[7] In her brief on remand, Clemons also makes reference to (1) "her public and pronounced efforts to alleviate alleged discrimination within DHR"; (2) her "strident opposition to alleged discrimination"; (3) and her "fervent opposition to alleged discrimination."  (Doc. #52 at 17-18).  Without any clarification as to context, including who, what, where, when, and why, these generalized statements are insufficient examples of other admissible evidence to support Clemons's Title VII retaliation claim and, even if admissible, do not sufficiently close the causal nexus gap as a matter of law.

[8] Clemons has asserted constitutional retaliation under § 1983 related to a series of letters that she wrote after Fuller decided to place Calhoun County on "in distress" status.  Because these activities are unrelated to protection under Title VII's anti-retaliation provision, they are beyond the scope of this memorandum opinion, but are otherwise dealt with in the reinstated portions of the court's prior summary judgment opinion.

October 31, 2003, which is seven (7) years after lodging an internal claim of discrimination and eighteen (18) months after giving testimony in the *Crum* lawsuit.

As the Eleventh Circuit recently explained the causal connection *prima facie* element:

> We have noted that the Supreme Court in a Title VII retaliation case has stated that in order to show a causal connection "mere temporal proximity between knowledge of protected activity and an adverse action must be 'very close.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (involving alleged retaliation under the ADA) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (alterations omitted)). Moreover, we have observed that the Supreme Court has cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. *Id.* We concluded that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

*Wallace*, 2006 WL 3626967, at *3. Time elapses of seven (7) years and of one and a half (1.5) years are not only not "very close," but also are substantially far from "very close."

Moreover, both of these times periods are well in excess of other examples in which the Eleventh Circuit has determined that a causal connection, in the absence of any other supporting evidence, did not exist as a matter of law. *See, e.g.*, *Watkins v. Huntsville, Ala.*, 176 Fed. Appx. 955, 956-57, No. 04-15607, 2006 WL 1004868, *1 (11th Cir. Apr. 18, 2006) (affirming summary judgment on plaintiff's retaliation

11

claim because eight month lapse between filing of EEOC charge and her termination does not support causal link and plaintiff could not show nexus otherwise); *Hammons v. George C. Wallace State Comm. Coll.*, 174 Fed. Appx. 459, 464, No. 05-14962, 2006 WL 655061, *5 (11th Cir. Mar. 16, 2006) (affirming summary judgment on plaintiff's retaliation claim because letter of grievance written to chancellor five months before termination is not sufficient temporal proximity to establish causal element of *prima facie* case); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) (three and one-half month temporal proximity, without more, is insufficient to create jury issue); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 951 (11th Cir. 2000) (holding that seven month time period between protected activity and adverse employment action is too indirect to satisfy causal connection requirement); *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1160-61 (11th Cir. 1999) (finding no causal link between protected activity in February 1994 and adverse employment actions in late 1994 and early 1995). Therefore, based upon binding Eleventh Circuit precedent, Clemons cannot demonstrate a causal connection as a matter of law.

  **C.** **Alternatively, Clemons's Title VII retaliation claim fails because she has not produced sufficient evidence of pretext.**

Defendants' explanation for reassigning Clemons to a vacant position that

would not negatively affect her pay or benefits stems from the Calhoun County Board of Human Resources' indication that it no longer wanted Clemons as the County Director. (*See* Doc. #22 at 26). Case law clearly provides that a plaintiff's mere belief, conjecture, or speculation that he or she was discriminated or retaliated against is not sufficient to support an inference of discrimination or to satisfy the plaintiff's burden in responding to a properly supported summary judgment motion. *See, e.g., Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989); *Pace v. Southern Railway System*, 701 F.2d 1383, 1391 (11th Cir.), *cert. denied*, 464 U.S. 1018 (1983) ("A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory [or retaliatory] motive, but rather must come forward with sufficient evidence to establish a *prima facie* case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact."); *Lewis-Webb v. Qualico Steel Co., Inc.*, 929 F. Supp. 385, 392 (M.D. Ala. 1996) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors; discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by speculating about the defendant's motives.") (quoting *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994)).

    Against this legal backdrop, Clemons has failed to adduce sufficient evidence

from which a reasonable jury could conclude that her transfer to a different position, but with an equivalent job classification, rate of pay, benefits, and opportunities was motivated by retaliation. Therefore, Clemons's retaliation claim is alternatively due to be dismissed for her failure to demonstrate adequate evidence of pretext. *See, e.g., Crawford v. City of Fairburn*, No. 06-13073, --- F.3d ---- (11th Cir. Mar. 29, 2007).

## IV. CONCLUSION

Based upon the foregoing, Defendants' Motion for Summary Judgment (Doc. #21) as to Clemons's Title VII retaliation claim is due to be **GRANTED**. More specifically, Clemons has failed to meet the reasonable material adversity standard of *Burlington Northern* in the context of her job transfer. Alternatively, Clemons is unable to demonstrate a sufficient causal connection. Accordingly, her *prima facie* case for Title VII retaliation fails as a matter of law for multiple reasons. Additionally, Clemons's Title VII retaliation claim fails for want of sufficient pretext evidence. A separate order will be entered.

**DONE** and **ORDERED** this 30th day of March, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge